| | AUSA: | Barrington Wilkins | Telephone: (313) 226-9621 |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: | Richard Cousins, ATF | Telephone: (313) 980-7304 |

# UNITED STATES DISTRICT COURT
for the

## Eastern District of Michigan

United States of America

v.

## Antoine Dion MCKINNEY

Case No.

Case: 2:24–mj–30400
Assigned To : Unassigned
Assign. Date : 9/18/2024
USA V. MCKINNEY (CMP)(CMC)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____September 17, 2024_____ in the county of _____Wayne_____ in the
_____EASTERN_____ District of ___MICHIGAN, SD___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841(a)(1) | Distribution of a controlled substance |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

_____
Complainant's signature

Richard Cousins, Special Agent - ATF
_____
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: _September 18, 2024_____

City and state: _Detroit, Michigan_____

_____
Judge's signature

Honorable Kimberly G. Altman, U.S. Magistrate Judge_____
_____
Printed name and title

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Special Agent Richard Cousins, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and make arrests of offenses enumerated under federal law.

2.    I have had extensive training at the Federal Law Enforcement Training Center in the Criminal Investigator Training Program and ATF Special Agent Basic Training. In addition, prior to my employment with ATF, I was a U.S. Customs and Border Protection Officer with United States Customs and Border Protection, for approximately three years. I also have a bachelor's degree in political science.

3.    I am currently assigned to the ATF Detroit Field Division, where I investigate various federal firearm violations. During my law

enforcement career, I have conducted and participated in numerous criminal investigations, including crimes of violence, controlled substances offenses, and firearm violations. Specifically, I have also investigated violations of Title 21 U.S.C. § 841(a)(1), possession with intent to distribute a controlled substance. I also work in conjunction with other ATF agents, who have extensive experience in criminal investigations, including investigations involving firearms, armed drug tracking, and criminal street gangs. I am familiar with, and have experience using, a variety of investigative techniques and resources, including physical and electronic surveillance, undercover and various types of informants, and cooperating sources.

4.      I have personal knowledge or have been provided by other law enforcement officers with the facts set forth herein. I have not included each and every fact known to me concerning this investigation; rather I have set forth only the facts necessary to establish probable cause that Antoine Dion MCKINNEY (DOB: XX/XX/1976) violated 21 U.S.C. § 841(a)(1) – possession with intent to distribute a controlled substance.

## PROBABLE CAUSE

### *Case Background*

5.      The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is investigating Antoine MCKINNEY (XX/XX/1976) for violations of 21 U.S.C. § 841(a)(1) (distribution of a controlled substance). The investigation reveals that MCKINNEY has been in possession of narcotics, communicated via telephonic conversation about the sale of narcotics and has sold narcotics, including crack cocaine and fentanyl, to an undercover ATF agent.

6.      Following the identification of MCKINNEY, ATF Agents, along with the Detroit Police Department, conducted multiple undercover purchases from MCKINNEY and executed federal search warrants on his residence and vehicle as further described below.

### *Criminal History*

7.      I reviewed MCKINNEY's computerized criminal history report which reflected that MCKINNEY was convicted for the following felony offenses out of the 3rd Circuit Court:

a. On October 30, 1994, MCKINNEY was arrested by the Detroit Police Department and charged with felony dangerous drugs. On October 6, 1995, MCKKINEY was found guilty of felony – controlled substance – possess and was sentenced to 1 year probation with the Michigan Department of Corrections (MDOC).

b. On February 12, 2005, MCKINNEY was arrested by the Detroit Police Department and charged with attempt – felony – dangerous drugs. On August 24, 2005, MCKINNEY was found guilty two counts of felony – controlled substance – DEL/MFG and one count of felony weapons – carrying concealed. MCKINNEY was sentenced to five to twenty years of incarceration with MDOC.

c. On February 1, 2012, MCKINNEY was arrested by the Wayne County Sheriff and charged with felony – dangerous drugs. On April 11, 2012, MCKINNEY pled guilty to one count of felony – controlled substance –

DEL/MFG and was sentenced to two years of probation with MDOC.

    d. On January 1, 2013, MCKINNEY was arrested by the Detroit Police Department and charged with felony – dangerous drugs. On February 24, 2014, MCKINNEY pled guilty to two counts of felony – controlled substance – DEL/MFG and was sentenced to five to twenty years incarceration with MDOC.

*Execution of Search Warrant*

8.      On September 10, 2024, the Honorable Magistrate Judge David R. Grand signed searched warrants number 24-50845-8 and 24-50845-9 for the search of MCKINNEY's hotel room and vehicle, located in the Easter District of Michigan.

9.      On September 17, 2024, ATF agents and Detroit Police Department (DPD) Task Force Officers (TFO) executed the above-referenced federal search warrants. MCKINNEY was detained after agents and officers observed MCKINNEY leaving the hotel, entering his vehicle, and departing. A traffic stop was conducted, and MCKINNEY was detained as agents and officers executed the search warrants.

10.  In a search of MCKINNEY's person, SA Mota recovered approximately $3,034.00 in US currency.

11.  In the search of the hotel room agents and officers recovered several items including:

  a.  One blue adidas bag recovered by SA Mota on the floor between the desk and tv stand containing:

    i.  Gallon seized zip lock bags containing smaller knotted plastic bags containing suspected heroin with a gross weight of approximately 1 kg. This item field tested positive for fentanyl.

    ii.  One knotted plastic bag containing suspected heroin with a gross weight of approximately 101.8 gross grams. This item field tested positive for fentanyl.

    iii.  One knotted plastic bag containing suspected heroin with a gross weight of approximately 54.5 gross grams. This item field tested positive for fentanyl.

iv.  One knotted plastic bag containing suspected heroin with a gross weight of approximately 101.3 gross grams. This item field tested positive for fentanyl.

v.  One knotted plastic bag containing suspected heroin with a gross weight of approximately 101.9 gross grams. This item field tested positive for fentanyl.

vi.  One knotted plastic bag containing suspected heroin with a gross weight of approximately 180.2 gross grams. This item field tested positive for fentanyl.

vii.  One knotted plastic bag containing paper folds containing suspected heroin with a gross weight of approximately 1.6 gross grams. This item field tested positive for fentanyl.

viii.  One plastic bag containing suspected fentanyl with a gross weight of approximately 19.7 gross grams. This item field tested positive for fentanyl.

ix. One knotted plastic bag containing suspected fentanyl with a gross weight of approximately 11.6 gross grams. This item field tested positive for fentanyl.

x. One knotted plastic bag containing suspected crack cocaine with a gross weight of approximately 121.8 gross grams. This item field tested positive for cocaine base.

xi. Narcotics packaging material including smaller zip lock bags, rubber bands, and a coffee grinder.

b. Two knotted plastic bags containing several smaller knotted plastic bags containing suspected heroin with a gross weight of 68.2 gross grams recovered by SA Mota on top of the desk. This item field tested positive for fentanyl.

c. One knotted plastic bag containing suspected fentanyl with a gross weight of 76.4 gross grams recovered by SA Mota on top of the desk. This item field tested positive for fentanyl.

d. One knotted plastic bag containing suspected crack cocaine with a gross weight of approximately 75.3 gross grams recovered by SA Mota on top of the desk. This item field tested positive for cocaine base.

e. One knotted plastic bag containing blue paper folds containing suspected heroin with a gross weight of approximately 3.5 gross grams recovered by SA Mota on top of the desk.

f. One knotted plastic bag containing smaller zip lock bags containing suspected heroin with a gross weight of approximately 2.2 gross grams recovered by SA Mota on top of the desk.

g. One knotted plastic bag containing suspected crack cocaine with a gross weight of approximately 7.5 gross grams recovered by SA Mota on top of the desk. This item field tested positive for cocaine base.

h. One zip lock bag containing blue paper folds containing suspected heroin with a gross weight of approximately 38.0 gross grams recovered by SA Mota on chair.

    i. One black press recovered by SA Mota in the closet.

    j. One sliver digital scale recovered by SA Mota on top of the desk.

    k. One black bag containing narcotics packaging material recovered by SA Olsen on the floor next to the TV stand.

12.   Based on my training and experience the quantity of narcotics along with the packaging and digital scale, press, and quantity of US currency are consistent with the illegal distribution of controlled substances.

13.   After receiving *Miranda* warnings, MCKINNEY agreed to speak with agents. MCKINNEY indicated the following:

    a. MCKINNEY has been selling illegal narcotics since he was approximately 12 years old and currently makes approximately $500 – $600 a day selling illegal narcotics.

    b. MCKKINEY indicated he is staying at the Quality Inn, and it takes him years to sell the quantity of illegal narcotics recovered from inside the hotel room.

## CONCLUSION

14.    Based on the above facts, there is probable cause to believe

that on September 17, 2024, while in the Eastern District of Michigan,

MCKINNEY possessed illegal controlled substances with the intent to

distribute in violation of 21 U.S.C. § 841(a)(1).

Special Agent Richard Cousins
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

Hon. Kimberly G. ALTMA N
United States Magistrate Judge

Dated:    September 18, 2024